UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **NELSON ESTRADA,** *on behalf of himself and all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>**ALPHA LAB SERVICES, INC.,**<br><br>*Defendant*. | Case No.: 1:24-cv-3531 |

# CLASS ACTION COMPLAINT

### INTRODUCTION

1. This action arises out of the offensive marketing practices of Defendant Alpha Lab Services, Inc. ("Defendant" or "Alpha Lab") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and the regulations promulgated thereunder.

2. Alpha Lab makes, or has made on its behalf, telemarketing calls soliciting its COVID-19 testing kits.

3. Alpha Lab makes these calls to telephone numbers registered on the National Do-Not-Call Registry.

4. Alpha Lab makes these calls to individuals who have previously requested (1) not to be called, and (2) to be added to Alpha Lab's internal do-not-call list.

5. Accordingly, Plaintiff Nelson Estrada ("Plaintiff" or "Mr. Estrada") brings this action on behalf of himself and Classes of similarly situated individuals.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

7. This Court has jurisdiction over Defendant because Defendant is headquartered in this District, conducts business transactions in this District and has committed tortious acts in/from this District.

8. Venue is proper in this District because Defendant resides within this District and because a substantial part of the conduct and omissions giving rise to this case occurred in, was directed from, and/or emanated from this District.

**PARTIES**

9. Plaintiff is, and at all times mentioned herein was, a citizen and resident of Houston, Texas.

10. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

11. Defendant is, and at all times mentioned herein was, a corporation organized and existing under the laws of Illinois with its headquarters located at 2060 E. Algonquin Rd., Suite 700, Schaumburg, IL 60173.

12. Defendant may be served via its President, Saleem M. Qadri.

13. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**TCPA BACKGROUND**

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

*National Do-Not-Call Registry and Internal Do-Not-Call List*

15. The TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

16. These regulations are codified at 47 C.F.R. § 64.1200(c)(1)-(2).

17. Specifically, no person or entity shall initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

18. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

19. The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

20. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at § 227(c)(1)(A), (E).

21. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer*

*Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

22. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

23. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

24. These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

25. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d)(1), (2), (3), (6).

26. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR § 64.1200(f)(14), which can be established by a "voluntary two-way communication." 47 CFR § 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR § 64.1200(f)(5)(i). "Telemarketing purposes," on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR § 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

27. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

28. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> "[S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]'" 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

29. These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is a separate and distinct violation of 47 U.S.C. § 227(c).

30. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. *See* 47 C.F.R. § 64.1200(e).

*Vicarious Liability*

31. A person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g.*, *In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding

5

declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶ 28 (2013).

32. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories, including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

## FACTUAL ALLEGATIONS

33. Mr. Estrada is the user of a cellular telephone number ending in 0020.

34. Mr. Estrada's cellular telephone number ending in 0020 is used for residential purposes.

35. Mr. Estrada's telephone number ending in 0020 has been on the National Do-Not-Call Registry since March 16, 2019.

36. On or about March 20, 2023, Mr. Estrada began receiving marketing calls made by or on behalf of Alpha Lab soliciting him with COVID-19 testing kits.

37. These calls all came from various phone numbers that used a (281) area code.

38. Upon information and belief, Alpha Lab used spoofing to make it appear that the caller was calling from a (281) area code, which was Mr. Estrada's area code, in an effort to make it more likely that Mr. Estrada would answer the call.

39. Such conduct—known as "spoofing"—is prohibited by the TCPA. *See* 47 U.S.C. § 227(e).

40. Mr. Estrada received at least the following calls from Alpha Lab soliciting him with COVID-19 testing kits:

- 3/20/2023, 2:46pm CDT, from number, 281-315-4955;
- 3/21/2023, 10:43am CDT, from number, 281-379-8876;
- 3/23/2023, 2:39pm CDT, from number, 281-340-2899;
- 3/30/2023, 2:07pm CDT, from number, 281-348-1836;
- 3/30/2023, 3:24pm CDT, from number, 281-367-7263;
- 4/05/2023, 11:00am CDT, from number, 281-356-1370;
- 4/07/2023, 11:46am CDT, from number, 281-390-4391;
- 4/07/2023, 2:30pm CDT, from number, 281-352-6722;
- 4/10/2023, 12:26pm CDT, from number, 281-336-9909;
- 4/10/2023, 1:29pm CDT, from number, 281-319-7120;
- 4/28/2023, 2:58pm CDT, from number, 281-315-3738;
- 5/04/2023, 2:21pm CDT, from number, 281-353-8333;
- 5/07/2023, 4:07pm CDT, from number, 281-395-0555; and
- 5/10/2023, 4:43pm CDT, from number, 281-347-5298.

41. During certain of the calls, Mr. Estrada would request that Alpha Lab cease calling him.

42. For example, during the first call on April 10, 2023, Mr. Estrada stated "don't call me."

43. Alpha Lab failed to honor Mr. Estrada's do not call request.

44. Alpha Lab called Mr. Estrada back that same day and continued to call him soliciting him with COVID-19 test kits.

7

45. Mr. Estrada did not provide his consent to receive these calls from Alpha Lab.

46. Mr. Estrada repeatedly requested that Alpha Lab cease calling him.

47. Alpha Lab's records or the records of third parties will reveal all of the calls Alpha Lab made, or had made, to Mr. Estrada and Class members.

48. Alpha Lab, and those calling on Alpha Lab's behalf, did not have written do-not-call policies or procedures at the time of the calls to Mr. Estrada and the Classes defined below. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the continued calls to Mr. Estrada after he directly asked not to be contacted.

49. Defendant's violations were negligent.

50. Alternatively, Defendant's violations were willful and knowing.

51. Mr. Estrada and the Classes were damaged by the violations alleged herein. Their privacy was invaded, Defendant's calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the unwanted calls. The calls were annoying and a nuisance, and wasted the time of Mr. Estrada and the Class members. *See, e.g.*, *Mims*, 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## DEFENDANT'S LIABILITY

52. Defendant uses automated systems to make telephone calls, to hundreds if not thousands of consumers across the U.S., including to consumers who have not provided their prior express consent, with whom there was no established relationship, and whose residential phone numbers are listed on the National Do-Not-Call Registry.

8

53. Defendant made two or more telephone solicitations to Mr. Estrada, whose number was on the National Do-Not-Call Registry for more than 30 days when the calls were placed. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

54. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Mr. Estrada is entitled to $500 per call through 47 U.S.C. § 227(c).

55. Mr. Estrada is entitled to an additional $1,500 per call because Defendant's actions were knowing and willful.

56. Defendant made two or more telemarketing calls to Mr. Estrada despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

57. Accordingly, for violations of 47 C.F.R. § 64.1200(d), Mr. Estrada is entitled to an additional $500 per call through 47 U.S.C. § 227(c).

58. Mr. Estrada is entitled to an additional $1,500 per call because Defendant's actions were knowing and willful.

## CLASS ACTION ALLEGATIONS

59. Mr. Estrada brings this action under Fed. R. Civ. P. 23 on behalf of two "Classes," defined as follows:

> Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls and/or text messages in a 12-month period when the telephone number to which the telephone calls or texts were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls/texts, from four years prior to the filing of the Complaint through class certification.

> ("Registry Class").

> Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls and/or text messages in a 12-month period.

("Policy Class").

(The Registry Class and the Policy Class, are collectively referred to herein as the "Classes").

60. Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

61. The Class members for whose benefit this action is brought are so numerous that joinder of all members is impracticable, as the Classes are comprised of hundreds, if not thousands, of individuals.

62. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

    a. The time period(s) during which Defendant made its calls;

    b. The telephone numbers to which Defendant called;

    c. The telephone numbers for which Defendant had prior express written consent;

    d. The purposes of such calls; and

    e. The names and addresses of Class members.

63. There are common questions of law and fact affecting the rights of the Class members, including, *inter alia*, the following:

    a. Whether Defendant (or someone acting on its behalf) made telemarketing calls to Plaintiff and Class members;

      b. Whether Plaintiff's and Class members' phone numbers were registered on the National Do-Not-Call Registry;

      c. Whether Defendant had the required policies and procedures prior to making telemarketing calls;

      d. Whether Defendant's statutory violations were willful and knowing; and

      e. Whether Defendant should be enjoined from engaging in such conduct in the future.

64. Plaintiff is a member of the Classes in that Defendant made two or more calls for telemarketing purposes, in a one-year period, to his telephone number, without his prior express written consent, and he received the calls more than 30 days after his telephone number was on the National Do-Not-Call Registry and after he asked Defendant to stop calling him.

65. Plaintiff's claims are typical of the claims of the Class members in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

66. Plaintiff and Class members have also suffered concrete harm in addition to statutory damages, as all Class members spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

67. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

68. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.

69. Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

70. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications.

71. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each Class member make individual actions uneconomical.

72. Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Registry Class)**

73. Mr. Estrada and the proposed Classes incorporate the foregoing allegations as if fully set forth herein.

74. Defendant made, or had made on its behalf, calls constituting telephone solicitations to Plaintiff's and Registry Class members' telephone numbers.

75. Plaintiff's and Registry Class members' telephone numbers were all on the National Do-Not-Call Registry for more than 30 days at the time of the calls.

76. Plaintiff and Registry Class members each received two or more such calls in a 12-month period.

77. Plaintiff and Registry Class members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

78. Plaintiff and Registry Class members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On behalf of Plaintiff and the Policy Class)

79. Mr. Estrada and the proposed Classes incorporate the foregoing allegations as if fully set forth herein.

80. Defendant made numerous calls for telemarketing purposes to Plaintiff's and Policy Class members' telephone numbers.

81. Defendant did so despite not having a written policy pertaining to "do not call" requests.

82. Defendant did not provide training to its personnel regarding the existence or use of any internal "do not call" list or policy.

83. Defendant did not record or honor "do not call" requests.

84. Defendant made two or more telemarketing calls to Plaintiff and Policy Class members' telephone numbers in a 12-month period.

85. Plaintiff and Policy Class members are entitled to an award of $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

86. Plaintiff and Policy Class members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes and appointing the undersigned counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate the statutes

referenced herein;

  C. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

  D. An award of statutory damages;

  E. An award of treble damages;

  F. An award of reasonable attorneys' fees and costs;

  G. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

        Respectfully submitted,

        By: */s/ Thomas A. Zimmerman, Jr.*
         Thomas A. Zimmerman, Jr.
         *tom@attorneyzim.com*
         Jeffrey D. Blake
         *jeff@attorneyzim.com*
         ZIMMERMAN LAW OFFICES, P.C.
         77 W. Washington Street, Suite 1220
         Chicago, IL 60602
         Tel: (312) 440-0020
         Fax: (312) 440-4180
         www.attorneyzim.com

         Max S. Morgan
         *max.morgan@theweitzfirm.com*
         THE WEITZ FIRM, LLC
         1515 Market Street, #1100
         Philadelphia, PA 19102
         Tel: (267) 587-6240
         Fax: (215) 689-0875

      Attorneys for Plaintiff and the Proposed Classes